IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JUDY M. MCGEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-04035-CV-C-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING COMMISSIONER'S DECISION**

Plaintiff Judy M. McGee seeks judicial review of the Commissioner of Social Security's denial of her applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff suffered from several severe impairments, including essential tremors, scoliosis, anxiety disorder, and depression, but retained the RFC to perform work as an officer helper, a shipping and receiving weigher, and a ticket printer and tagger.

Because substantial evidence supports the ALJ's determination, the Commissioner's decision denying benefits is AFFIRMED.

**Factual and Procedural Background**

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her Title II application on March 23, 2011, and her Title XVI application on March 31, 2011. Both applications alleged a disability onset date of December 10, 2008. The Commissioner denied the applications at the initial claim level, so Plaintiff requested an ALJ

hearing. On January 25, 2013, the ALJ rendered a decision finding that Plaintiff was not disabled. Plaintiff sought review from the Appeals Council, and on January 6, 2014, it denied Plaintiff's request, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); see 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

2

available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

### I. Substantial evidence supports the ALJ's RFC formulation.

Both of Plaintiff's arguments on appeal attack how the ALJ formulated Plaintiff's RFC. A claimant's RFC is the most she can still do despite her physical or mental limitations. *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007). In formulating a claimant's RFC, the ALJ must consider *all* the relevant, credible record evidence, including a claimant's medical records, observations from treating and examining physicians, and a claimant's subjective statements. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

Here, the ALJ confined Plaintiff to light work with additional restrictions. R at 19. The ALJ limited Plaintiff to work that only occasionally required climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never required climbing ladders, ropes, or scaffolds; permitted alternating among sitting, standing, and walking every thirty minutes; and only involved incidental contact with the general public. R. at 19.

To reach this RFC, the ALJ exhaustively reviewed and analyzed the record evidence in her six-and-a-half-page opinion. Plaintiff, however, contends that in the process of doing so the ALJ (1) erroneously discounted her credibility, and (2) failed to include supported limitations in the RFC. Both arguments are unavailing.

#### A. Substantial evidence supports the ALJ's credibility determination.

Plaintiff first argues that the ALJ improperly discounted her subjective allegations. The Court finds this argument to be without merit.

3

In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including: medical records; statements from the claimant and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. §§ 404.1529, 416.929; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ articulates inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

Here, the ALJ provided several valid and well-supported reasons for discounting Plaintiff's credibility. The ALJ first found that the medical evidence overall did not support the *full* extent of Plaintiff's allegations. R. at 20-22. With respect to Plaintiff's physical ailments, the opinion evidence and treatment records were inconsistent with Plaintiff's complaints of disabling limitations. R. at 21. For instance, although Plaintiff claimed that her scoliosis rendered her disabled, consultative examiner John Lucio, D.O. found that she had full range of motion in most of her musculoskeletal system, good strength in her upper and lower extremities, and a stable gait. R. at 329-331. Likewise, her primary care physician Stephen Stewart, M.D observed that Plaintiff demonstrated normal motor strength and a normal gait. R. at 310, 370. These inconsistencies detract from Plaintiff's credibility. *See Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (ALJ may discount subjective complaints that conflict with medical records).

As for Plaintiff's mental impairments, the objective observations of several consultative examinations conflicted with her claims of disability. For example, the mental status observations from said exams revealed that Plaintiff presented no abnormalities in orientation,

thought content, appearance, thought processes, judgment, insight, or cognitive functioning.  R. at 318-19, 360-62, 386.  This lack of objective support detracts from Plaintiff's claims of disabling limitations.  *See Edwards*, 314 F.3d at 966.

Plaintiff, however, argues that some medical opinions and global assessment of functioning ("GAF") scores corroborate her allegations of disabling mental impairments.  Kim Dempsey, Psy.D., ("Dr. Dempsey") concluded that Plaintiff's mental impairments would "interfere with maintaining employment," R. at 319, while Linda Thompson, Ph.D. ("Dr. Thompson") found Plaintiff markedly limited in several functional areas.  R. at 366-67.

The Court finds that these opinions provide little medical support to Plaintiff's claims.  As the ALJ noted, Dr. Dempsey's opinion is extremely conclusory insofar as it does not explain *how* Plaintiff's mental impairments interfere with her ability to work, or in what ways.  R. at 319.  Similarly, Dr. Thompson's opinion is nothing more than a conclusory checklist with no citation to treatment notes or any other supporting data.  R. at 366-67.  Conclusory, vague, and unsupported opinions, such as these, are of little value.  *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

Nor do Plaintiff's GAF scores corroborate her claims of disabling mental conditions.  Two of the consultative examiners rendered a GAF score of 50.  R. at 319, 386.  While these scores may suggest the existence of a serious mental disorder and accompanying symptoms, they do not necessarily prove that the disorder causes disabling limitations.  *Doolittle v. Colvin*, No. 13-CV-04261-DGK-SSA, 2014 WL 7369635, at *3 (W.D. Mo. Dec. 29, 2014).  Moreover, where, as here, the bare GAF scores conflict with other objective evidence, they are entitled to little, if any, weight.  *See Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010); *Gamez v. Colvin*, No. 13-4199-CV-W-DGK-SSA, 2014 WL 4112925, at *2 (W.D. Mo. Aug. 19, 2014) ("Low

5

GAF scores have limited probative value."). Thus, the Court finds that the ALJ properly found that the objective medical evidence was not fully consistent with Plaintiff's subjective allegations.

The ALJ also discounted Plaintiff's credibility because of a lack of consistent, aggressive medical treatment for her impairments. Despite claiming that mental conditions plagued her for several years, including for lengthy periods prior to her onset date, Plaintiff never sought regular treatment from any mental health professional. In fact, aside from consultative examinations, she visited a psychologist, Dr. Thompson, on only one occasion. R. at 360-364. As for her physical ailments, although she regularly saw treating sources, she only received conservative treatment, mostly consisting of over-the-counter medications. R. at 45-46, 385. The lack of regular treatment for her mental impairments and the conservative treatment for her physical impairments contradict her subjective allegations of disabling limitations. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (ALJ may consider record of conservative treatment in evaluating credibility); *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (ALJ may discount credibility if claimant fails to *regularly* pursue medical treatment).

Finally, although not singly dispositive, the ALJ also noted that Plaintiff's history of meager earnings and daily activities detracted from her credibility. R. at 22. Prior to her alleged onset date, Plaintiff never earned more than $6,252.00 in a year. R. at 202-15. This evidence arguably demonstrates a lack of motivation to work, thus the ALJ did not err in factoring this into his credibility analysis. *See Comstock*, 91 F.3d at 1147 (ALJ may consider a claimant's years of low earnings and breaks in employment in the credibility analysis); *see also Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010) ("[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, we must affirm the

6

Case 2:14-cv-04035-DGK   Document 11   Filed 01/05/15   Page 6 of 8

ALJ's decision."). And Plaintiff's daily activities—caring for children, attending school events, mowing the lawn, washing dishes, shopping, handling finances, playing board games, and reading—also detract from her claims of disabling mental and physical limitations. R. at 58, 60, 62-64, 242-45; *see McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ may consider daily activities as one factor in the credibility analysis).

Because the ALJ provided several valid and well-supported reasons for discounting Plaintiff's allegations, the Court finds no error here.

**B. The ALJ did not err in failing to include all limitations noted in certain opinions or by failing to explain her reasons for not doing so.**

Plaintiff next challenges the ALJ's treatment of the opinion evidence. First, Plaintiff contends that although the ALJ gave "great weight" to Dr. Dempsey's opinion and an opinion from state agency reviewing psychologist Stanley Hutson, Ph.D. ("Dr. Hutson"), she erroneously failed to include all the limitations noted by these doctors. In particular, Plaintiff asserts that these opinions support moderate limitations in concentration, persistence, and pace, and an ability to understand only simple instructions. Plaintiff further argues that, at a minimum, the ALJ should have explained *why* she did not include these limitations.

As a threshold matter, although some medical evidence must support an RFC, it is not the only evidence that an ALJ considers. *See Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000) (noting that RFC is based upon all the record evidence). As for medical opinions in particular, the ALJ is under no obligation to adopt all the limitations of any one psychologist. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Thus, just because the ALJ gave Dr. Dempsey's and Dr. Hutson's opinions "great weight," does not necessarily mean she was required to include all limitations asserted by these sources.

7

Nor did the ALJ err in failing to explain precisely why she excluded certain limitations. An ALJ is not required to refute every alleged limitation. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation."). Here, it is clear from the ALJ's six-and-a-half-page review and analysis of the record evidence that she considered all of Plaintiff's limitations but only included those limitations she found credible. R. at 19-26.

Even assuming that the record evidence supported limitations in concentration, persistence, pace, and the ability to understand only simple instructions, the ALJ eventually selected jobs that would accommodate such limitations. All three positions are classified as unskilled work, R. at 43-44, and individuals with the above deficits can generally perform this type of work. *See* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985); *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding that the ALJ properly accounted for limitations in concentration, persistence, and pace by limiting a claimant to simple, repetitive, routine tasks). Thus, even if the ALJ erred in not explicitly including these limitations in the RFC, she nevertheless identified jobs that Plaintiff could perform.

## Conclusion

Because substantial evidence supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 5, 2015             /s/ Greg Kays
                                   GREG KAYS, CHIEF JUDGE
                                   UNITED STATES DISTRICT COURT